# IN THE UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF TEXAS
### DALLAS DIVISION

| | | |
|---|---|---|
| PATRICIA ERVING, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | Civil Action No. 3:16-CV-1091-L |
| | § | |
| DALLAS HOUSING AUTHORITY, | § | |
| ERIC ROBINSON, and | § | |
| STACY ROBERTS, | § | |
| | § | |
| Defendants. | § | |

## AMENDED MEMORANDUM OPINION AND ORDER

It has come to the court's attention that there is a typographical error in its Memorandum Opinion and Order (Doc. 42) issued on March 28, 2018, in this civil action. The typographical error appears on page twenty-one (21) of the Memorandum Opinion and Order, six lines from the top of the page, and consists of the erroneous inclusion of the words "the evidence" on that line. In the interest of accuracy, the court hereby **vacates** its March 28, 2018 Memorandum Opinion and Order (Doc. 42), and **issues** this Amended Memorandum Opinion and Order in its place. The Amended Memorandum Opinion and Order does not change the substance of the opinion issued on March 28, 2018.

Before the court are Defendants' Motion for Summary Judgment (Doc. 19), filed August 18, 2017; Defendants Dallas Housing Authority, Eric Robinson, and Stacy Roberts's Motion to Strike and/or Exclude Plaintiff's Experts Moses Ramos and Conrad Hamric (Doc. 22), filed August 18, 2017; and Defendants' Objections to Plaintiff's Summary Judgment Evidence (Doc. 28), filed October 2, 2017. After careful consideration of the motions, legal briefs, appendixes, record, and

applicable law, the court **grants in part** and **denies in part** Defendants' Motion for Summary Judgment (Doc. 19); **grants** Defendants Dallas Housing Authority, Eric Robinson, and Stacy Roberts's Motion to Strike and/or Exclude Plaintiff's Experts Moses Ramos and Conrad Hamric (Doc. 22); and **overrules as moot** Defendants' Objections to Plaintiff's Summary Judgment Evidence (Doc. 28).

## I.    Factual and Procedural Background

This case arises out of the employment of Plaintiff Patricia Erving ("Erving") by Defendant Dallas Housing Authorty ("DHA").  Erving alleges that while she was employed at DHA she was subjected to unwelcome sexual harassment by her supervisor, Defendant Eric Robinson ("Robinson"), and also verbally harassed by Stacy Rogers ("Rogers"), DHA's asset management project manager.  Erving asserts federal claims against Defendants DHA, Robinson, and Rogers (collectively, "Defendants") for sexual harassment and retaliation in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e, *et seq*. ("Title VII"), and  Chapter 21 of the Texas Labor Code, Tex. Lab. Code Ann. § 21.001, *et seq*. (West 2015).  She seeks compensatory and exemplary damages, permanent injunctive relief, prejudgment and postjudgment interest, attorney's fees, and costs.  Defendants have filed a motion for summary judgment.  As a threshold issue, Defendants contend that Erving's claims must be dismissed as time-barred.   Alternatively, Defendants Robinson and Rogers seek summary judgment on all claims, arguing that an individual employee may not be held liable under Chapter 21 of the Texas Labor Code or Title VII.  Defendants seek summary judgment on the basis that Erving has failed to raise a genuine dispute of material fact with respect to her asserted claims, and that it is, therefore, entitled to entry of judgment as a matter

of law. DHA also seeks summary judgment on its *Ellerth/Faragher*[1] affirmative defense with

respect to Erving's sexual harassment claims. The court now sets forth the facts upon which it relies

to resolve the summary judgment motion. In setting forth the facts, the court applies the summary

judgment standard as set forth in Section II(A) of this decision.

Between approximately 2011 and August 2015, DHA employed Erving, an African-

American female, as a Mixed Population Building Coordinator at a DHA property known as Audelia

Manor. Beginning in 2012, according to Erving, Robinson engaged in unwanted touching; made

noises while he was in the restroom urinating with the door open, even after she requested he shut

the door; told Erving on one occasion when he was making noises with the bathroom door open that

"he was jerking off" because he was thinking of her; made comments to her or which she overheard

him tell others about kissing her, that her lips were irresistible, and that he wanted to kiss those "big,

juicy lips"; rubbed against her bottom and commented on its size; stating he wanted to get that "big

booty" and "big titties" and them "big old juicy red lips"; stated that he wanted some spearmint

"Now and Later" while staring at her breasts when she was wearing a lime green jacket; tried to

touch and massage her shoulders; came up behind her and tried to look down her shirt at her breasts;

and on one occasion in or around January 2015, showed Erving a sexually graphic video on his

cellular telephone of a woman "giving a man a blow job."[2]

---

[1] *Burlington Indus., Inc. v. Ellerth*, 524 U.S. 742, 765 (1998); *Faragher v. City of Boca Raton*, 524 U.S. 775, 807-08 (1998).

[2] In Defendants' Objections to Plaintiff's Summary Judgment Evidence, Defendants object to Erving's deposition testimony that Robinson showed Erving a sexually graphic video on his cell phone of a woman giving a man a blow job. Defs.' Obj. ¶ 6(d). Defendants argue this testimony is too speculative and conclusory. The court **overrules** this objection. In response to the question, "What did he show you on his phone that was graphic, sexual, or offensive to you?", Erving stated: "I think it was a woman or something giving a man a blow job or something." Pl.'s Summ. J. Resp. App. 24. The court concludes this testimony is not so speculative or conclusory as to render it inadmissible. Defendants also object to Erving's

From February 17, 2015, through May 10, 2015, Erving was on a leave of absence for a disability under the Family Medical Leave Act ("FMLA").[3]  Pursuant to a reasonable accommodation by DHA, Erving returned to work on a part time basis (twenty hours per week) from May 11, 2015, through June 25, 2015.  On June 26, 2015, Erving began another leave of absence, after DHA received medical certification that Erving would require another leave for four to six weeks.  On June 30, 2015, Monica Tharp (DHA's Benefits Administrator) sent Erving a letter stating that DHA was able to accommodate her leave, but that DHA needed to receive medical information from her doctor by July 24, 2015, indicating the date she would return to work and whether she can perform the essential functions of her job.  In this June 30, 2015 correspondence, DHA also encouraged Erving to request a reasonable accommodation, which might be available to allow her to perform the essential functions of her job. This correspondence also informed Erving that if she failed to provide the additional information or request a specific reasonable accommodation by July 24, 2015, DHA might consider terminating her employment.

On July 24, 2015, DHA received medical information from Erving's doctor, Dr. Moses Ramos.  In this documentation, Dr. Ramos states as follows: "continue on disability - may need longer than 8 weeks, anticipate pt will be on long term disability for 6 months due to refractory nature of her illness."  Defs.' Summ. J. App. 5.

---

deposition testimony that Robinson stated that before he fired her, "he wanted to get that big old booty, juicy booty, red lips, something before he do what he have to do."  Defs.' Obj. ¶ 6(e).  Defendants argue this testimony is inadmissible hearsay because the statement was allegedly made to a third party, and not to her. Having reviewed Erving's deposition testimony, the court **overrules** this objection.  Although Erving stated at her deposition that Robinson was directing his statement to another person, her testimony is based on what she personally overheard him say, which is admissible.  Further, under these circumstances, this testimony is admissible as a statement of a party opponent under Federal Rule of Evidence 801(d)(2)(A).

[3] The FMLA allows eligible employees to take up to twelve weeks of leave in any one-year period to address his or her serious health condition or that of a family member. 29 U.S.C. § 2612(a)(1)(C), (D).

DHA terminated Erving's employment on August 3, 2015. DHA sent Erving a letter notifying her of the termination, explaining that "the medical certification dated July 24, 2015[,] received from your physician's office indicated that your leave of absence will continue, did not establish a return to work date, and did not indicate whether you will be able to perform the essential functions of your job." *Id.* at 8.

After Erving filed a charge of sex discrimination with the Equal Employment Opportunity Commission ("EEOC"), the EEOC issued her a right-to-sue letter, which she received on September 17, 2015. On December 16, 2015, ninety days after receipt of the EEOC's letter, counsel for Erving, Conswella Edwards, Esq., attempted to e-file this action in the District Court of Dallas County. The clerk of court rejected the filing because Ms. Edwards had failed to include a signature block with the e-filing. On December 21, 2015, Ms. Edwards re-filed this action and included the required signature block. On March 21, 2016, asserting federal question jurisdiction, Defendants removed the case to this court pursuant to 28 U.S.C. § 1441.

On August 18, 2017, Defendants filed Defendants' Motion for Summary Judgment (Doc. 19), as well as their Motion to Strike and/or Exclude Plaintiff's Experts Moses Ramos and Conrad Hamric (Doc. 22). On October 2, 2017, Defendants filed Defendants' Objections to Plaintiff's Summary Judgment Evidence (Doc. 28). The court first addresses Defendants' Motion for Summary Judgment.

## II. Defendants' Motion for Summary Judgment

### A. Legal Standard

Summary judgment shall be granted when the record shows that there is no genuine dispute as to any material fact and that the moving party is entitled to judgment as a matter of law. Fed. R.

Civ. P. 56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317, 323-25 (1986); *Ragas v. Tennessee Gas Pipeline Co.*, 136 F.3d 455, 458 (5th Cir. 1998). A dispute regarding a material fact is "genuine" if the evidence is such that a reasonable jury could return a verdict in favor of the nonmoving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). When ruling on a motion for summary judgment, the court is required to view all facts and inferences in the light most favorable to the nonmoving party and resolve all disputed facts in favor of the nonmoving party. *Boudreaux v. Swift Transp. Co., Inc.*, 402 F.3d 536, 540 (5th Cir. 2005). Further, a court "may not make credibility determinations or weigh the evidence" in ruling on a motion for summary judgment. *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 150 (2000); *Anderson*, 477 U.S. at 254-55.

Once the moving party has made an initial showing that there is no evidence to support the nonmoving party's case, the party opposing the motion must come forward with competent summary judgment evidence of the existence of a genuine dispute of material fact. *Matsushita Elec. Indus. Co. v. Zenith Radio*, 475 U.S. 574, 586 (1986). On the other hand, "if the movant bears the burden of proof on an issue, either because he is the plaintiff or as a defendant he is asserting an affirmative defense, he must establish beyond peradventure *all* of the essential elements of the claim or defense to warrant judgment in his favor." *Fontenot v. Upjohn Co.*, 780 F.2d 1190, 1194 (5th Cir. 1986) (emphasis in original). "[When] the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no 'genuine [dispute] for trial.'" *Matsushita*, 475 U.S. at 587. (citation omitted). Mere conclusory allegations are not competent summary judgment evidence, and thus are insufficient to defeat a motion for summary judgment. *Eason v. Thaler*, 73 F.3d 1322, 1325 (5th Cir. 1996). Unsubstantiated assertions, improbable inferences, and

unsupported speculation are not competent summary judgment evidence. *See Forsyth v. Barr*, 19 F.3d 1527, 1533 (5th Cir. 1994).

The party opposing summary judgment is required to identify specific evidence in the record and to articulate the precise manner in which that evidence supports his or her claim. *Ragas*, 136 F.3d at 458. Rule 56 does not impose a duty on the court to "sift through the record in search of evidence" to support the nonmovant's opposition to the motion for summary judgment. *Id*.; *see also Skotak v. Tenneco Resins, Inc.*, 953 F.2d 909, 915-16 & n.7 (5th Cir. 1992). "Only disputes over facts that might affect the outcome of the suit under the governing laws will properly preclude the entry of summary judgment." *Anderson*, 477 U.S. at 248. Disputed fact issues that are "irrelevant and unnecessary" will not be considered by a court in ruling on a summary judgment motion. *Id*. If the nonmoving party fails to make a showing sufficient to establish the existence of an element essential to its case and on which it will bear the burden of proof at trial, summary judgment must be granted. *Celotex*, 477 U.S. at 322-23.

### B. Analysis

#### 1. Prerequisites to Filing Title VII Suit

Defendants move for summary judgment on the ground that Erving did not file this action within ninety days after receiving her right-to-sue letter as required by 42 U.S.C. § 2000e-5(f)(1). Erving opposes the motion.

Title VII actions are governed by a statute of limitations that requires that suit be brought within ninety days of the plaintiff's receipt from the EEOC of a notice of the right to sue. 4 2 U.S.C. § 2000e-5(f)(1). A court will dismiss a Title VII action when a plaintiff files her claim after the 90-day statute of limitations has expired. *See Taylor v. Books A Million, Inc.*, 296 F.3d 376, 379 (5th

Cir. 2002) ("Courts within this Circuit have repeatedly dismissed cases in which the plaintiff did not file a complaint until after the ninety-day limitation period had expired."). "This requirement to file a lawsuit within the ninety-day limitation period is strictly construed." *Id.* "The ninety-day filing requirement is not a jurisdictional prerequisite, but more akin to a statute of limitations." *Harris v. Boyd Tunica, Inc.*, 628 F.3d 237, 239 (5th Cir. 2010) (citing *Espinoza v. Missouri Pac. R.R. Co.*, 754 F.2d 1247, 1248 n.1 (5th Cir. 1985)). "Thus, the ninety-day filing requirement is subject to equitable tolling. *Id.* (citing *Crown, Cork & Seal Co., Inc. v. Parker*, 462 U.S. 345, 349 n.3 (1983)).

Federal courts, including the Fifth Circuit, apply equitable tolling only in "rare and exceptional circumstances." *Id.* (quoting *Teemac v. Henderson*, 298 F.3d 452, 457 (5th Cir. 2002) (internal quotation marks and citation omitted)); *Rowe v. Sullivan*, 967 F.2d 186, 192 (5th Cir. 1992) ("[F]ederal courts have typically extended equitable relief only sparingly.") (citation omitted). "Courts have typically extended equitable tolling where 'the claimant has actively pursued his judicial remedies by filing a defective pleading during the statutory period, or where complainant has been induced or tricked by his adversary's misconduct into allowing the filing deadline to pass.'" *Harris*, 628 F.3d at 239 (quoting *Irwin v. Department of Veterans Affairs*, 498 U.S. 89, 96 & nn. 3-4 (1990)).

It is undisputed that the EEOC issued Erving a right-to-sue letter, which she received on September 17, 2015. It is also undisputed that the documents attached to Defendants' Notice of Removal show that the clerk of court in the District Court in Dallas County, Texas, opened a new civil action on December 22, 2015, which is ninety-five days after Erving received her right-to-sue letter. *See* Defs.' Notice of Removal (Doc. 1-1). In opposition to Defendants' argument that her claim is time-barred, Erving contends that on December 16, 2015, ninety days after receipt of the

EEOC's letter, her attorney, Ms. Edwards, filed this action electronically in the District Court of Dallas County, but that the clerk of court returned the filing to her via e-mail on Friday, December 18, 2015, with a notation that Ms. Edwards had failed to include a signature block with the e-filing, and an instruction to correct and resubmit the filing on or before December 22, 2017. On Monday, December 21, 2015, the next business day, Ms. Edwards refiled this action and included the required signature block. In support of her assertion that Ms. Edwards attempted to file this action on December 16, 2015, within the statutory period, Erving includes in her appendix a copy of an e-mail from "no-reply@efiletexas.gov" to "edwardslawoffice@gmail.com" dated Friday, December 18, 2015, with the subject line: "Filing Returned." *See* Pl.'s Summ. J. Resp. App. 5. The e-mail indicates that the original petition was e-filed on December 16, 2015 at "2:51:21 p.m.," and states that the reason for rejection of the filing is an "incomplete signature block." *Id.* The e-mail also includes the following comment: "PLEASE INCLUDE AN E-MAIL WITHIN THE SIGNATURE BLOCK. FILE AGAIN BY 12/22/15 AND REFERENCE THE ORIGINAL 'ENVELOPE NUMBER.' THANK YOU! - DAVID HERNANDEZ PHONE NUMBER 214-653-7787." *Id.*[4]

Although Erving does not explicitly invoke the doctrine of equitable tolling, examining her arguments in the light most favorable to her, the court concludes that she is, in effect, asking the

---

[4] Defendants object to the court's consideration of this document, arguing that it is unauthenticated and constitutes hearsay. The court **overrules** this objection. Under Rule 201 of the Federal Rules of Evidence, a court "may judicially notice a fact that is not subject to reasonable dispute because it . . . can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned." Fed. R.Evid. 201(b)(2). "Filings with government agencies, public records, and government documents available from an official government website or other reliable source on the Internet have been held not to be subject to reasonable dispute." *Domain Vault LLC v. McNair*, 2015 WL 5695519, at *2 (N.D. Tex. Sept. 28, 2015) (Lindsay, J.) (citations omitted). The court, on its own, has gone to website for the District Court of Dallas County, and pulled up the docket sheet for this case. The docket sheet contains a notation that on December 16, 2015, Ms. Edwards filed a civil action cover sheet attempting to commence this action within the statutory period.

court to equitably toll her claims based one her attempt to file her lawsuit within the ninety-day statutory period. Under these circumstances, the court concludes that the application of equitable tolling is warranted. The scenario presented is a claimant who has actively pursued her judicial remedies by filing a defective pleading during the statutory period. In the Fifth Circuit, this is one of the limited occasions when equitable tolling may be invoked. *Harris*, 628 F.3d at 239. Defendants have failed to provide any argument or evidence that Ms. Edwards was anything less than diligent in pursuing Edward's rights. This is hardly a case of a plaintiff "sitting on her rights." Further, Defendants have failed to show any prejudice, that is, they have provided no evidence that they will be unable to defend this lawsuit. Based on its decision to equitably toll the ninety-day filing period from December 15, 2015 to December 21, 2015, the court will deny Defendants' Motion for Summary Judgment on this issue and proceed to address the remaining arguments in support of summary judgment.

### 2. Erving's Claims Against Defendants Robinson and Rogers

In addition to bringing her Title VII and state-law discrimination claims against DHA, Erving asserts these claims against Robinson and Rogers. Defendants Robinson and Rogers move for summary judgment as to Erving's claims against them, arguing that there is no individual liability for employees under Title VII or Chapter 21 of the Texas Labor Code. The court agrees.

Title VII provides for liability only as to an employer, as defined in the statutes, not an individual supervisor or fellow employee. *See Turner v. Baylor Richardson Medical Ctr.*, 476 F.3d 337, 343 (5th Cir. 2007).[5] This is true regardless of whether the person is sued in his or her

---

[5] Title VII defines an "employer" as:

[A] person engaged in an industry affecting commerce who has fifteen or more employees for each working day in each of twenty or more calendar weeks in the current or preceding

individual or official capacity. *See Smith v. Amedisys Inc.*, 298 F.3d 434, 448–49 (5th Cir. 2002).

Additionally, because Chapter 21 of the Texas Labor Code was modeled to execute the policies of

Title VII, supervisory personnel are not liable in their individual capacity for violations of Chapter

21. *See Vincent v. Coates,* 2004 WL 1787838, at *3 (N.D. Tex. July 2, 2004) ("[I]ndividual liability

is not available under [Chapter 21 of the Texas Labor Code].") (citing *Jenkins v. Guardian Indus.

Corp.*, 16 S.W.3d 431, 439 (Tex. App.—Waco 2000, pet. denied)).

Erving does not allege any facts in her pleadings or introduce any evidence that would

support the conclusion that either Robinson or Rogers was her employer. She fails to raise a genuine

dispute of material fact as to this issue, and Robinson and Rogers are entitled to judgment as a matter

of law. Consequently, Defendants' Motion for Summary Judgment with respect to all Title VII and

state-law discrimination claims against Robinson and Rogers will be granted on this basis.

In addition, in her response, Erving fails to address her claims against Robinson and Rogers,

much less respond to any of Defendants' arguments in support of their motion for summary

judgment on these claims. The court concludes that Erving has abandoned or waived her claims

against Robinson and Rogers for alleged violations of Title VII or Chapter 21 of the Texas Labor

Code.

When a party fails to pursue a claim or defense beyond the party's initial pleading, the claim

is deemed abandoned or waived. *Black v. Panola Sch. Dist.*, 461 F.3d 584, 588 n.1 (5th Cir. 2006)

(plaintiff abandoned claim when she failed to defend claim in response to motion to dismiss);

_____

calendar year, and any agent of such a person[.]

42 U.S.C. § 2000e(b). Although this definition includes "any agent" of an employer, the Fifth Circuit has noted that the purpose of this language was merely to import respondeat superior liability into Title VII. *See Indest v. Freeman Decorating, Inc.*, 164 F.3d 258, 262 (5th Cir. 1999).

*Keenan v. Tejeda*, 290 F.3d 252, 262 (5th Cir. 2002) (noting that "an issue raised in the complaint but ignored at summary judgment may be deemed waived[]") (citation omitted). As Erving failed to pursue her claims against Robinson and Rogers, the claims are no longer before the court, as she has abandoned or waived them. Accordingly, Erving's abandonment or waiver of her Title VII and state-law discrimination claims against Robinson and Rogers is an alternative ground under which the court will grant summary judgment in Robinson's and Rogers's favor on her claims against them.

### 3. Erving's Sexual Harassment Claims

Erving asserts she was subjected to sexual harassment by Robinson that ultimately resulted in her termination and that she was subjected to a hostile work environment. Defendants move for summary judgment on both claims.

Title VII of the Civil Right Act of 1964 provides, in relevant part, that "[i]t shall be an unlawful employment practice for an employer . . . to discriminate against any individual with respect to [her] compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin." 42 U.S.C. § 2000e-2(a)(1).[6] As the United States Supreme Court has recognized, "[t]he phrase 'terms, conditions, or privileges of employment' evinces a congressional intent to strike at the entire spectrum of disparate treatment of men and women in employment." *Meritor Savings Bank, FSB v. Vinson*, 477 U.S. 57, 64 (1986) (internal

---

[6] Chapter 21 of the Texas Labor Code (formerly the Texas Commission on Human Rights Act ("TCHRA")) "is modeled after federal civil rights law." *NME Hosps., Inc. v. Rennels*, 994 S.W.2d 142, 144 (Tex.1999). An express purpose of the TCHRA is to "provide for the execution of the policies of Title VII of the Civil Rights Act of 1964 and its subsequent amendments." *Id.* (quoting Tex. Lab. Code § 21.001(1)). The TCHRA "purports to correlate 'state law with federal law in the area of discrimination in employment.'" *Id.* The evidentiary framework for stating a claim under the TCHRA is the same as that employed under Title VII. *Farrington v. Sysco Food Servs., Inc.*, 865 S.W.2d 247, 251 (Tex. App.-Houston [1st Dist.] 1993, writ denied); *Martin v. Kroger Co.*, 65 F. Supp.2d 516, 530 (S.D.Tex.1999). This court therefore applies the same analysis on Erving's state-law discrimination claims as to her Title VII claims.

quotations and citation omitted).  An employer violates Title VII when the employer allows the workplace to be "permeated with discriminatory intimidation, ridicule, and insult . . . that is sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment[.]" *Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 21 (1993) (internal quotations and citations omitted).  The Court in *Harris* further noted that "[t]his standard . . . takes a middle path between making actionable any conduct that is merely offensive and requiring the conduct to cause a tangible psychological injury." *Id.*

Erving may prove her sexual harassment claims either by establishing that a tangible employment action was taken against her because of her sex (also known as *quid pro quo* harassment) or by establishing that a supervisor with immediate or successively higher authority discriminated against her because of her sex and created a hostile or abusive environment.  *See Faragher v. City of Boca Raton*, 524 U.S. 775, 786-87 (1998); *Burlington Indus., Inc. v. Ellerth*, 524 U.S. 742, 751 (1998); *Wyatt v. Hunt Plywood Co., Inc.*, 297 F.3d 405, 409 (5th Cir. 2002)*; Casiano v. AT&T Corp.*, 213 F.3d 278, 283-84 (5th Cir. 2000); *Butler v. Ysleta Indep. Sch. Dist.*, 161 F.3d 263, 268-69 (5th Cir. 1998).  The court must first determine whether the *quid pro quo* or hostile work environment standard applies.  *Casiano*, 213 F.3d at 283.  The determination turns on whether Erving has suffered a "tangible employment action," *id.*, which is defined as a "significant change in employment status such as hiring, firing, failing to promote, reassignment with significantly different responsibilities, or a decision causing a significant change in benefits." *Ellerth*, 524 U.S. at 761.  If an employee can show that a tangible employment action resulted from the employee's response to the sexual harassment, the employer is vicariously liable for the actions of the supervisor

under Title VII. *Casiano*, 213 F.3d at 284. If the employee did not suffer a tangible employment action, the suit is a hostile work environment action.

In this case, Erving argues that she suffered quid pro quo sexual harassment as well as sexual harassment based on hostile work environment. Defendants move for summary judgment on both claims.

### a. Quid Pro Quo Sexual Harassment

Defendants move for summary judgment on Erving's quid pro quo sexual harassment claim. In support, they contend that she has not adduced any evidence establishing a nexus between her discharge and Robinson's alleged harassment, and that the summary judgment evidence shows that she was terminated because of her inability to establish a firm date on which she would be returning to work from her leave-of-absence.

To establish a quid pro quo sexual harassment claim, "[t]he plaintiff must show that [she] suffered a 'tangible employment action' that 'resulted from [her] acceptance or rejection of [her] supervisor's alleged sexual harassment.'" *LaDay v. Catalyst Tech., Inc.*, 302 F.3d 474, 481 (5th Cir. 2002) (quoting *Casiano*, 213 F.3d at 283). "When a plaintiff proves that a tangible employment action resulted from a refusal to submit to a supervisor's sexual demands, he or she establishes that the employment decision itself constitutes a change in the terms and conditions of employment that is actionable under Title VII." *Ellerth*, 524 U.S. at 753-54; *see also Faragher*, 524 U.S. at 807. The employer is strictly liable in such cases. *See Ellerth*, 524 U.S. at 759-65. As previously stated, a tangible employment action consists of "significant change[s] in employment status, such as hiring, firing, failing to promote, reassignment with significantly different responsibilities, or a decision causing a significant change in benefits." *Id.* at 761.

After establishing that the employer engaged in a tangible employment action,

> the road branches toward a second stop at which the court must determine whether the tangible employment action suffered by the employee resulted from [her] acceptance or rejection of [her] supervisor's alleged sexual harassment. If the employee cannot show such nexus, then [her] employer is not vicariously liable under Title VII for sexual harassment by a supervisor; but if the employee can demonstrate such a nexus, the employer is vicariously liable per se and is not entitled to assert the one and only affirmative defense permitted in such cases since *Ellerth* and *Faragher*.

*Casiano*, 213 F.3d at 283-84 (citations and footnotes omitted).

Defendants do not dispute that Erving suffered a tangible employment action in the form of termination. The question is whether Erving has adduced evidence that would permit a reasonable trier of fact to find that her refusal of Robinson's sexual overtures resulted in her termination.

The court takes note that Erving has not introduced any evidence that Robinson was the decisionmaker as to her termination. "In a quid pro quo sexual harassment action, the fact that the harasser was the decisionmaker for the tangible employment action gives rise to an inference that the harraser's discriminatory animus motivated that action." *Briseno v. McDaniel*, 2004 WL 2203255, at *3 (N.D. Tex. Sept. 30, 2004) (Fitzwater, J.) (citation omitted). "That the decisionmaker was not also the harasser, however, is not fatal to plaintiff's claim. It simply means that the plaintiff cannot avail herself of the inference of causation created by a common identity of a harasser and a decisionmaker." *Id.* (internal citation omitted). Erving, therefore, must adduce evidence that would permit a reasonable trier of fact to find that Robinson's discriminatory animus resulted in DHA's decision to terminate her employment. *See id.*; *see also Wilson v. Sysco Food Servs. of Dallas, Inc.*, 940 F.Supp. 1003, 1012 (N.D. Tex. 1996) (Buchmeyer, C.J.) (denying summary judgment where evidence showed that harasser was involved in decision to terminate plaintiff).

Erving has provided evidence of instances when Robinson stated that he would fire her or informed residents at Audelia Manor that he would fire her. This evidence presented by Erving is sufficient to create a genuine dispute of material factual with respect to the scope of Robinson's authority to hire and fire and to control the terms and conditions of her employment. Otherwise stated, a reasonable trier of fact could conclude that Robinson participated in and influenced the decision to terminate her employment. Accordingly, the court will deny Defendants' Motion for Summary Judgment on Erving's quid pro quo sexual harassment claim.

<i>b.</i>    <i>Sexual Harassment Based on Hostile Work Environment</i>

To establish a sexual harassment claim based on hostile work environment, the employee must show: (1) that she belongs to a protected class; (2) that she was subject to unwelcome sexual harassment; (3) that the harassment was based on sex; (4) that the harassment affected a "term, condition, or privilege" of employment; and (5) that the employer knew or should have known of the harassment and failed to take prompt remedial action. *Harvill v. Westward Commn'cs, L.L.C.*, 433 F.3d 428, 434 (5th Cir. 2005); *Watts v. Kroger Co.*, 170 F.3d 505, 509 (5th Cir. 1999); *Pfeil v. Intercom Telecomm.*, 90 F. Supp. 2d 742, 748 (N.D. Tex. 2000). In *Faragher* and *Ellerth*, the Supreme Court modified this test with respect to cases where the alleged harasser is a supervisor with immediate or higher authority over the harassed employee. *Watts*, 170 F.3d at 509. In such cases, the employee need only meet the first four elements of the test. If a plaintiff can prove the first four elements, an "employer is subject to vicarious liability to a victimized employee." *Id.* (quoting *Faragher*, 524 U.S. at 807).

DHA argues that it is entitled to summary judgment because Erving fails to raise a genuine dispute of material fact that the alleged harassment affected a "term, condition, or privilege" of her

employment (the fourth prong of her prima facie case). Regarding this fourth element of a prima

facie case for a Title VII sexual harassment hostile work environment claim,

> [h]arassment affects a term, condition, or privilege of employment if it is sufficiently
> severe or pervasive to alter the conditions of the victim's employment and create an
> abusive working environment. Workplace conduct is not measured in isolation. In
> order to deem a work environment sufficiently hostile, all of the circumstances must
> be taken into consideration. This includes the frequency of the discriminatory
> conduct; its severity; whether it is physically threatening or humiliating, or a mere
> offensive utterance; and whether it unreasonably interferes with an employee's work
> performance. To be actionable, the work environment must be both objectively and
> subjectively offensive, one that a reasonable person would find hostile or abusive,
> and one that the victim in fact did perceive to be so.

*Hernandez v. Yellow Transp., Inc.*, 670 F.3d 644, 651 (5th Cir. 2012) (citations and internal

quotation marks omitted); *see also Walker v. SBC Servs., Inc.*, 375 F. Supp. 2d 524, 538 (N.D. Tex.

2005) (Lindsay, J.) ("Central to the court's inquiry into a hostile environment claim is whether the

alleged harasser's actions have undermined the victim's workplace competence, discouraged her

from remaining on the job, or kept her from advancing in her career.") (citations omitted). "A hostile

work environment exists 'when the workplace is permeated with discriminatory intimidation,

ridicule, and insult, that is sufficiently severe or pervasive to alter the conditions of the victim's

employment and create an abusive working environment.'" *Stewart v. Mississippi Transp. Comm'n*,

586 F.3d 321, 328 (5th Cir. 2009) (quoting *Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101,

116 (2002)).

Merely offensive conduct is not actionable. *See Harris*, 510 U.S. at 21. The legal standard

for workplace harassment is "high." *Gowesky v. Singing River Hosp. Sys.*, 321 F.3d 503, 509 (5th

Cir. 2003). "[T]he Supreme Court has warned that these high standards are intentionally demanding

to ensure that Title VII does not become a general civility code, and when properly applied, they will

filter out complaints attacking the ordinary tribulations of the workplace, such as the sporadic use

of abusive language." *Howard v. United Parcel Serv., Inc.*, 447 F. App'x 626, 632 (5th Cir. 2011) (per curiam) (citations and internal quotation marks omitted) (quoting *Faragher*, 524 U.S. at 788).

On the record before the court, viewing all evidence in the light most favorable to Erving and drawing all reasonable inferences in her favor, the court concludes that she has raised a genuine dispute of material fact as to all elements of her hostile work environment claim, including that the harassment was severe or pervasive and that Robinson's conduct affected a "term, condition, or privilege" of her employment.[7] Erving presents competent summary judgment evidence that she perceived Robinson's alleged conduct to be hostile or abusive, that she was unable to do her job as a result of his conduct, and that she took FMLA disability leave because of the stress at work. *Compare Moyer v. Jos. A. Bank Clothiers, Inc.*, 2013 WL 4434901, at *12 (N.D. Tex. Aug. 19, 2013) (Lindsay, J.), *aff'd*, 601 F. App'x 247 (5th Cir. 2015) (finding it significant that the plaintiff "was nonetheless able to perform her job" and was "a good employee and met all of her job requirements"); *Davis v. Wal-Mart Stores, Inc.*, 2007 WL 836860, at *9 (N.D. Tex. Mar. 19, 2007) (Lindsay, J.) ("Plaintiff has failed to submit evidence that the alleged conduct unreasonably interfered with her work performance."). Unlike in *Davis* and *Moyer*, here, Erving has provided evidence raising a genuine dispute of material fact that she was unable to perform her job duties and discouraged from continuing to work for DHA. Further, as a reasonable juror could conclude that Robinson's conduct affected a "term, condition, or privilege of employment," that is, that the alleged sexual harassment was sufficiently severe or pervasive so as to alter the conditions of Erving's

---

[7] Defendants do not concede that Erving has met the first three elements of her claim, namely, (1) that she belongs to a protected class; (2) that she was subject to unwelcome sexual harassment; and (3) that the harassment was based on sex. Nevertheless, Defendants do not move for summary judgment on these factors or present the court with any analysis of these elements. In any event, having reviewed the evidence, the court concludes that Erving has satisfied her burden with respect to these three elements.

employment and create a hostile work environment, the court will deny DHA's motion for summary judgment on this issue.

In sum, Erving has introduced evidence of multiple incidents of sexual harassment by Robinson over a period of several years. Although some of this evidence would not of itself be sufficient to create a genuine dispute of material fact, and some of the incidents do not, in isolation, appear to relate to her gender, when all the admissible evidence is viewed in combination and as part of a greater context, it is adequate to allow a reasonable jury to find in Erving's favor on her hostile work environment claim.

c.      *Ellerth/Faragher Affirmative Defense*

In the alternative to its argument that it is entitled to summary judgment because Erving has failed to raise a genuine dispute of material fact as to her sexual harassment hostile work environment claim, DHA seeks summary judgment on its *Ellerth/ Faragher* affirmative defense, contending that "the evidence will show that DHA exercised reasonable care to prevent and correct promptly any sexually harassing behavior, and that [Erving] failed to take advantage of any preventative or corrective opportunities provided by DHA to avoid harm otherwise." Defs.' Summ. J. Br. 3 (Doc. 21).   Erving opposes DHA's motion, contending that Defendants cannot avail themselves of this defense as a matter of law because her supervisor's alleged harassment culminated in her termination, an tangible employment action, and, alternatively, because she has raised a genuine dispute of material fact as to whether Defendants can satisfy the two-prongs of the *Ellerth/Faragher* affirmative defense.

Title VII was designed to encourage "antiharassment policies and effective grievance mechanisms." *Ellerth*, 524 U.S. at 764.   "Normally, an employer is strictly liable for a supervisor's

harassment of an individual whom he or she supervises." *Pullen v. Caddo Parish Sch. Bd.*, 830 F.3d 205, 209 (5th Cir. 2016) (citation omitted). "The *Ellerth/Faragher* affirmative defense is an exception and is available to employers when a plaintiff alleges sexual harassment by a supervisor but does not claim that the harassment resulted in a tangible employment action." *Id.* (citation omitted). "The defense has two elements. First, the employer must show that it exercised reasonable care to prevent and correct sexual harassment. Second, it must establish that the employee unreasonably failed to take advantage of preventive or remedial opportunities provided by the employer." *Id.* at 209-10 (citation omitted); *see also Faragher*, 524 U.S. at 807.

The court first agrees with Erving that the *Ellerth/Faragher* affirmative defense is not available to Defendants since Robinson's harassment resulted in her termination. *See Ellerth*, 524 U.S. at 753-54. In the alternative, assuming arguendo that the affirmative defense were available to Defendants, viewing all evidence in the light most favorable to Erving, the court concludes she has raised a genuine dispute of material fact as to whether DHA exercised reasonable care to prevent and correct the alleged sexual harassment and whether she unreasonably failed to take advantage of preventive or remedial opportunities provided by DHA. With respect to the first element, which focuses on the company's conduct, it is undisputed that DHA had a policy against harassment. Erving provides competent summary judgment, however, that in 2014 she complained to DHA manager, Sam Sally ("Sally"), that Robinson made unwelcome sexual advances and she was concerned he would retaliate against her is she refused to comply. Erving stated at her deposition that even though Sally told her that DHA would handle the situation, in her estimation, it did nothing to address the situation. Erving also filed a written report with DHA concerning Robinson's alleged harassment on June 25, 2015, but DHA did nothing. On this evidence, the court concludes that

Erving has raised a genuine dispute of material fact as to whether DHA exercised reasonable care to prevent and correct the alleged sexual harassment.

With regard to the second element of the *Ellerth/Faragher* affirmative defense, which focuses on whether the employee unreasonably failed to take advantage of an employer's preventive or corrective opportunities, the above-referenced deposition testimony is sufficient to raise a genuine dispute of material fact as to whether Erving unreasonably failed to avail herself of any preventive or corrective opportunities provided by DHA. While DHA is correct that prior to June 2015, Erving did not file any written complaints about Robinson's alleged sexual harassment, viewing the evidence in the light most favorable to Erving, a reasonable trier of fact could find that she has raised a genuine dispute of material fact that she took advantage of DHA's preventive or corrective opportunities. *Compare Casiano*, 213 F.3d at 287 (employee unreasonably failed to take advantage of employer-provided preventive or corrective opportunities when he suffered at least fifteen propositions over a four-month period but never reported any of the incidents until months after the last one); *Scrivner v. Socorro Ind. Sch. Dist.*, 169 F.3d 969, 971 (5th Cir. 1999) (employee failed to reasonably avail herself of employer's preventive and corrective sexual harassment policies, in part, because "from the summer of 1995 to March 1996, [the plaintiff] never complained about [her principal's] increasingly offensive behavior.").

In light of the foregoing, even assuming that the *Ellerth/Faragher* affirmative defense were available to Defendants, the court determines that Erving has raised a genuine dispute of material fact as to whether DHA can satisfy the two-prongs of its *Ellerth/Faragher* affirmative defense. Accordingly, the court will deny Defendants' Motion for Summary Judgment on this issue.

### 4.     Erving's Retaliation Claim

Erving contends that Defendants retaliated against her in violation of Title VII and Chapter 21 of the Texas Labor Code for filing a written complaint on June 25, 2015, with DHA management about Robinson's alleged sexual harassment by, among other things, rejecting her application for medical leave on July 24, 2015, even though her medical leave had previously been approved prior to her complaint, prematurely terminating her approved medical leave, and terminating her employment on August 3, 2015.  Defendants move for summary judgment on Erving's retaliation claims.

### a.     Legal Standard - Retaliation

It is "an unlawful employment practice for an employer to discriminate against any of [its] employees . . . because [the employee] has opposed any practice made an unlawful employment practice" under Title VII, or "because [the employee] has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing" under Title VII.  42 U.S.C. § 2000e-3(a); *see also Clark County Sch. Dist. v. Breeden*, 532 U.S. 268, 269 (2001).  Whether the employee opposes an unlawful practice or participates in a proceeding against the employer's activity, the employee must hold a reasonable belief that the conduct she opposed violated Title VII. *Long v. Eastfield Coll.*, 88 F.3d 300, 305 (5th Cir. 1996).

In the Fifth Circuit, the *McDonnell Douglas* burden shifting framework applies to Title VII retaliation claims.  *Royal v. CCC & R Tres Arboles, L.L.C.*, 736 F.3d 396, 400 (5th Cir. 2013) (citing *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 807 (1973)).  *McDonnell Douglas* requires that: (1) first, the employee must demonstrate a prima facie case of retaliation; (2) the burden then shifts to the employer, who must state a legitimate non-retaliatory reason for the employment action; and

(3) if that burden is satisfied, the burden then ultimately falls to the employee to establish that the employer's stated reason is actually a pretext for unlawful retaliation. *Id.* To demonstrate a prima facie case of retaliation, Erving must prove "(1) she engaged in protected activity; (2) an adverse employment action occurred; and (3) a causal link exists between the protected activity and the adverse employment action." *Id.*

> b.    *Discussion*

In support of summary judgment, Defendants argue that Erving has failed to establish a causal connection between filing a written complaint on June 25, 2015, and her termination. Defendants also contend that even if she satisfies her prima facie case,

> the undisputed summary judgment evidence establishes that DHA had a legitimate, non-retaliatory purpose for its action, as both DHA and the residents of Audelia Manor needed a Mixed Population Building Coordinator at that property and Ms. Erving's medical care providers could not provide a return to work date and/or verify that when she did return to work that she would be able to perform the essential functions of that position.

Defs.' Summ. J. Br. 13 (Doc. 21). Defendants contend that summary judgment is required because Erving "failed to meet her burden to establish that DHA's stated reason for her termination was merely a pretext for the real retaliatory purpose." Defs.' Reply Br. 9 (Doc. 29). Further, Defendants contend that Erving must point to an "ultimate employment decision" to satisfy her retaliation claim.

First, Defendants have applied the wrong legal standard in asserting that Erving must point to an "ultimate employment decision" to satisfy her burden of showing she suffered an adverse employment decision as a result of engaging in protected conduct. In *Burlington Northern & Santa Fe Railway Co. v. White*, the Supreme Court held that, because the discrimination and retaliation provisions of Title VII have different statutory language and different purposes, "the anti-retaliation

provision, unlike the substantive provision, is not limited to discriminatory actions that affect the terms and conditions of employment." 548 U.S. 53, 64 (2006). Consistent with this view, the Court held that a plaintiff claiming retaliation under Title VII must show that a reasonable employee would have found the alleged retaliatory action "materially adverse" in that "it well might have dissuaded a reasonable worker from making or supporting a charge of discrimination." *Id.* at 68 (quotation marks and citation omitted). In so ruling, the Court rejected Fifth Circuit authority, *id.* at 67, which defined adverse employment actions as "ultimate employment decisions" and limited actionable retaliatory conduct to acts "such as hiring, granting leave, discharging, promoting, and compensating." *Id.* at 61 (quoting *Mattern v. Eastman Kodak Co.*, 104 F.3d 702, 707 (5th Cir.1997)). In evaluating whether actions are materially adverse, the Court went on to hold that "petty slights, minor annoyances, and simple lack of good manners will not" deter or dissuade a reasonable employee from making or supporting a charge of discrimination, and therefore they do not constitute conduct that is "materially adverse." *Id.* at 68.

With respect to Erving's prima facie case, Defendants have not challenged that she has satisfied the first two elements, namely that she engaged in protected activity and that an adverse employment action occurred. As to the third element, although Erving may not ultimately be able to establish at trial a nexus between her complaint to management about Robinson's sexual harassment and the retaliatory acts of which she complains, the evidence is sufficient to preclude summary judgment on this element of her prima facie case.

Further, she has also introduced sufficient evidence to raise a genuine dispute of material fact that Defendants' proffered legitimate, nondiscriminatory reason for her August 3, 2015 termination—that DHA could not accommodate her request for leave because the residents of

Audelia Manor required a Mixed Population Building Coordinator—was false or was a pretext to fire Erving for complaining about Robinson's sexual harassment or to engage in the other retaliatory acts of which she complains.

For these reasons, the court concludes that Erving has raised a genuine dispute of material fact as to her retaliation claims under Title VII and Chapter 21 of the Texas Labor Code. Accordingly, the court will deny Defendants' Motion for Summary Judgment on these claims.

### III. Defendants Dallas Housing Authority, Eric Robinson, and Stacy Roberts's Motion to Strike and/or Exclude Plaintiff's Experts Moses Ramos and Conrad Hamric (Doc. 22)

Defendants move to strike Erving's designated experts, Dr. Moses Ramos and Conrad Hamric, LCSW, because she "did not produce an expert report from either of these witnesses or produce a 'summary of the facts and opinions to which the witness is expected to testify,' as required under Federal Rules of Civil Procedure 26(a)(2)(C)(ii)." Defs.' Mot. to Strike ¶ 3 (quoting Fed. R. Civ. P. 26(a)(2)(C)(ii)). Erving did not file a response to this motion.

Rule 26(a)(2) of the Federal Rules of Civil Procedure governs disclosures of expert testimony. Rule 26(a)(2) separates experts into two types: those who must provide an expert report under Rule 26(a)(2)(B) and those who are exempt from the expert report requirement under Rule 26(a)(2)(C). Federal Rule of Civil Procedure 26(a)(2)(B) states that the disclosure of a witness must be accompanied by a written report, "if the witness is one retained or specially employed to provide expert testimony in the case or one whose duties as the party's employee regularly involve giving testimony." Rule 26(a)(2)(C) prescribes the disclosure requirements for nonretained experts, namely, experts who are neither retained or specially employed to provide expert testimony in the case nor ones whose duties as the party's employee regularly involve giving expert testimony.

"Treating physicians, such as the physicians at issue here, are generally not required to provide an expert report when they testify about their treatment of a patient." *Carr v. Montgomery Cty., Tex.*, 2015 WL 5838862, at *2 (S.D. Tex. Oct. 7, 2015) (citing Fed. R. Civ. P. 26(a)(2)(C), Advisory Comm. Note (2010)).

Rule 26(a)(2)(C) provides:

*Witnesses Who Do Not Provide a Written Report*. Unless otherwise stipulated or ordered by the court, if the witness is not required to provide a written report, this disclosure must state:

(i) the subject matter on which the witness is expected to present evidence under Federal Rule of Evidence 702, 703, or 705; and

(ii) a summary of the facts and opinions to which the witness is expected to testify.

This Rule, adopted in 2010, is intended to ensure that an opposing party has some notice as to the testimony the nonretained expert will provide. *See* 8A Charles Alan Wright, et al., Federal Practice and Procedure § 2031.2, at 92 (3d ed. 2010 & Supp. 2016). With respect to the level of detail required to satisfy this rule requiring "a summary of the facts and opinions to which the witness is expected to testify," another federal judge in this Division provided a succinct overview of recent district court decisions on the issue:

Although the court is not aware of any controlling precedent that governs the level of detail required in disclosures under this Rule, some principles are found in persuasive authority. The court "must take care against requiring undue detail, keeping in mind that these witnesses have not been specially retained and may not be as responsive to counsel as those who have." Rule 26(a)(2)(C) advisory committee's note. The disclosure must state opinions, not merely topics of testimony. *See Carr v. Montgomery Cty., Tex.*, 2015 WL 5838862, at *3 (S.D. Tex. Oct. 7, 2015) (holding that disclosures at issue were insufficient); *Tolan v. Cotton*, 2015 WL 5332171, at *7 (S.D. Tex. Sept. 14, 2015) (same); *Brown v. Joseph Cory Holdings, LLC*, 2014 WL 12585673, at *1 (N.D. Tex. Apr. 1, 2014) (Means, J.) (same). And the disclosure must contain at least a summary of the facts upon which the opinions are based. *See Carr*, 2015 WL 5838862, at *3; *Tolan*, 2015 WL 5332171, at *7;

> *Brown*, 2014 WL 12585673, at *1.  But the requirement of a "summary" may be
> satisfied by an "abstract, abridgement, or compendium of the opinion and facts
> supporting the opinion."  *Anders v. Hercules Offshore Servs., LLC*, 311 F.R.D. 161,
> 164 (E.D. La. 2015) (quoting *Rea v. Wis. Coach Lines, Inc.*, 2014 WL 4981803, at
> *5 (E.D. La. Oct. 3, 2014)) (holding that disclosures at issue were sufficient).

*Everett Fin., Inc. v. Primary Residential Mortg., Inc.*, 2017 WL 90366, at *1–2 (N.D. Tex. Jan. 10,

2017) (Fitzwater, J.); *see also Tolan*, 2015 WL 5332171, at *6 (finding that a "summary of opinions"

under Federal Rules of Civil Procedure 26(a)(2)(C) means "a brief account of the main opinions of

the expert, and that the opinions must state a view or judgment regarding a matter that affects the

outcome of the case.").

On April 13, 2017, the court issued its First Amended Scheduling Order establishing June

5, 2017, as the deadline for Erving to designate experts in accordance with Rule 26(a)(2) of the

Federal Rules of Civil Procedure, and August 18, 2017, as the deadline for the parties to file

objections to, or motions to strike or exclude, expert testimony.  First Am. Sch. Order ¶ 4 (Doc. 10).

It is undisputed that Erving designated no retained testifying experts, and that she expressly

designated her treating physician, Dr. Ramos, and Conrad Hamric, LCSW, as "non retained"

testifying experts without providing any written reports.  *See* Ex. A to Defs.' Mot. to Strike

("Plaintiff's Designation of Expert Witnesses") (Doc. 22-1).   In her Designation of Expert

Witnesses, dated February 17, 2017, Erving identified Dr. Ramos as a "treating expert" on the

"disability of Patricia Erving" and stated:

> Dr. Ramos and any and all other healthcare providers associated with Dr. Ramos
> involved in the examination, diagnosis, care or treatment of Plaintiff.  Medical facts
> and opinions concerning examination, diagnosis, care, treatment, or evaluation of
> Plaintiff.

*Id.*  With respect to Conrad Hamric, LCSW, Erving identifies him as a "treating expert" and stated:

Conrad Hamric and any and all other healthcare providers associated with Conrad Hamric involved in the examination, diagnosis, care or treatment of Plaintiff. Medical facts and opinions concerning examination, diagnosis, care, treatment, or evaluation of Plaintiff.

*Id.*

These "disclosures" do not meet the requirements of Rule 26(a)(2)(C). Here, Erving provides only general topics of testimony, rather than an actual summary of the facts and opinions to which each designated expert witness is expected to testify. These disclosures omit any "abstract, abridgment, or compendium" that would satisfy the Rule 26(a)(2)(C) requirement of a fact and opinion summary. Nowhere does Erving's designation reflect that her treating physicians formed an opinion as to the cause of her disability during their treatment or diagnosis; Erving merely baldly states Dr. Ramos and Conrad Hamric, LCSW, treated her. Further, with respect to Conrad Hamric, LCSW, Erving fails to state the subject of his testimony, required under Rule 26(a)(2)(C)(i).

Defendants argue that as a result of Erving's failure to fully comply with the requirements of Rule 26(a)(2)(C) of the Federal Rules of Civil Procedure, the court should exclude Dr. Moses Ramos and Conrad Hamric, LCSW, from testifying as expert witnesses in this case.[8] As previously stated, the purpose of Rule 26(a)(2) is to provide an opposing party with fair notice of the content

---

[8] Defendants acknowledge that they have access to the medical records of these two witnesses, but argue that disclosure solely of medical records is insufficient as a summary of the facts and opinions to which the witness is expected to testify. The court agrees. Although the court has not located any Fifth Circuit authority on this issue, the overwhelming majority of district courts in this Circuit to have addressed the issue have concluded that disclosure of medical records, without more, does not satisfy the expert disclosure requirement of Rule 26(a)(2)(C). *See, e.g.*, *McCranie v. Home Depot U.S.A., Inc.*, 2016 WL 7626597, at *7 (E.D. Tex. Aug. 25, 2016) ("Medical records, however, do not constitute a Rule 26(a)(2)(C) summary."); *Knighton v. Lawrence*, 2016 WL 4250484, at *2-3 (W.D. Tex. Aug. 9, 2016) ("[S]everal courts have rejected the notion that a disclosure solely of medical records is sufficient as a summary of the facts and opinions to which the witness is expected to testify.") (internal quotations omitted); *Williams v. State*, 2015 WL 5438596, at *3-4 (M.D. La. Sept. 14, 2015) ("[A] disclosure of medical records alone is insufficient to satisfy the lower standard of Rule 26(a)(2)(C).") (collecting cases).

of the expert's testimony.  Defendants contend they "would be prejudiced if these witnesses are allowed to present expert testimony at the trial of this matter, without having provided Defendants an idea about those topics they intend to testify about."  Defs.' Mot. to Strike ¶ 4 (Doc. 22).

Despite the court's conclusion that Erving's expert disclosures fail to comply with Rule 26(a)(2), exclusion is not mandatory or automatic.  Instead, it is a matter of this court's discretion. *Geiserman v. MacDonald*, 893 F.2d 787, 791 (5th Cir. 1990). "If a party fails to provide information or identify a witness as required by Rule 26(a) . . . , the party is not allowed to use that information or witness to supply evidence on a motion, at a hearing, or at a trial, unless the failure was substantially justified or is harmless." Fed. R. Civ. P. 37(c)(1).  In deciding whether to exercise its discretion and exclude an expert witness for failure to comply with Rule 26(a)(2), the court is guided by four factors: "(1) the importance of the evidence; (2) the prejudice to the opposing party of including the evidence; (3) the possibility of curing such prejudice by granting a continuance; and (4) the explanation for the party's failure to disclose."  *Texas A&M Research Found. v. Magna Transp., Inc.*, 338 F.3d 394, 402 (5th Cir.  2003) (citation omitted).

Erving provides no explanation to justify her failure to comply with Rule 26.  As previously stated, Erving failed to file a response to Defendants' motion to strike.  Nevertheless, the court will attempt to consider the four factors.  As she has failed to file any opposition to the motion to strike, she has failed to provide the court with any indication regarding the importance of these experts' testimony or an explanation for her failure to comply with Rule 26(a)(2).  Factors (1) and (4), therefore, weigh in favor of excluding the experts' testimony.  Further, Defendants contend they "would be prejudiced if these witnesses are allowed to present expert testimony at the trial of this matter, without having provided Defendants an idea about those topics they intend to testify about."

Defs.' Mot. to Strike ¶ 4 (Doc. 22). A proper expert designation allows opposing counsel to anticipate the expert's testimony and make decisions about how to approach that expert. *See Continental Cas. Co. v. F-Star Prop. Mgmt., Inc.*, 2011 WL 2887457, at *7 (W.D. Tex. July 15, 2011) (noting that a party's failure to provide a proper summary of facts and opinions is prejudicial because opposing counsel cannot determine whether to depose that witness or decide what rebuttal evidence to offer). In light of Defendants' assertion of prejudice and the lack of any opposition from Erving, the court concludes that factor (2), therefore, also weighs in favor of excluding the experts' testimony. With regard to factor (3), the possibility of curing such prejudice by granting a continuance, to cure the deficient expert designation, the court would need to give Erving an opportunity to supplement her designations, which were due on June 5, 2017, pursuant to the court's First Amended Scheduling Order (Doc. 10), causing further delay and prejudice to Defendants and interfering with the court's ability to manage its docket. *See Sierra Club, Lone Star Chapter v. Cedar Point Oil Co. Inc.*, 73 F.3d 546, 571 (5th Cir.1996) (noting that Rule 26(a) requires complete initial disclosures and that supplemental disclosures are "not intended to provide an extension of the deadline by which a party must deliver the lion's share of its expert information"). Further, a continuance will only unnecessarily further delay this case, which was originally filed in state court in December 2015, and which has been pending for approximately two years before this court. Finally, Erving has not given a reason for her deficient designations or even responded to Defendants' Motion to Strike.

Under these circumstances, the court concludes that Erving's failure to file proper summaries of facts and opinions for Dr. Ramos and Conrad Hamric, LCSW, is not harmless or substantially justified. As a result, the court will grant Defendants Dallas Housing Authority, Eric Robinson, and

Stacey Roberts's Motion to Strike and/or Exclude Plaintiff's Experts Moses Ramos and Conrad Hamric.

## IV.     Defendants' Objections to Plaintiff's Summary Judgment Evidence

DHA has filed various objections to Erving's summary judgment evidence.  The court either has not relied on evidence to which Defendants object or has concluded that the evidence is admissible.  Accordingly, the objections are **overruled as moot** or as lacking merit.

## V.     Conclusion

For the reasons states herein, the court **grants in part** and **denies in part** Defendants' Motion for Summary Judgment (Doc. 19).  Specifically, the court **grants** the motion insofar as Erving's employment discrimination claims against Defendants Eric Robinson and Stacy Rogers, which are hereby **dismissed with prejudice**.  As genuine disputes of material fact remain for trial with respect to Erving's sexual harassment and retaliation claims against DHA, Defendants' Motion for Summary Judgment is **denied** as to these claims.  Further, the court **grants** Defendants Dallas Housing Authority, Eric Robinson, and Stacy Roberts's Motion to Strike and/or Exclude Plaintiff's Experts Moses Ramos and Conrad Hamric (Doc. 22), and these two individuals will not be permitted to testify as experts at the trial of this action; and **overrules as moot** Defendants' Objections to Plaintiff's Summary Judgment Evidence (Doc. 28).

Remaining for trail are Erving's claims of sexual harassment and retaliation under Title VII and Chapter 21 of the Texas Labor Code against Defendant DHA.  The court will reset the trial of this case and amended pretrial deadlines by separate order.

**It is so ordered** this 17th day of September, 2018.

Sam A. Lindsay
United States District Judge